<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

GLEN MAYS,                          :
                                    :   Civil Action No. 09-4772 (JAG)
            Plaintiff,              :
                                    :
                                    :
            v.                      :   **OPINION**
                                    :
SCO TRUPPO, et al.,                 :
                                    :
            Defendants.             :


**APPEARANCES:**

        GLEN MAYS, Plaintiff <u>pro</u> <u>se</u>
        #743493D
        New Jersey State Prison
        P.O. Box 861
        Trenton, New Jersey 08625

**GREENAWAY, JR.,** District Judge

        Plaintiff, Glen Mays, a state inmate currently confined at
the New Jersey State Prison in Trenton, New Jersey, seeks to
bring this action in <u>forma</u> <u>pauperis</u>.  Based on his affidavit of
indigence and the absence of three qualifying dismissals, within
28 U.S.C. § 1915(g), this Court will grant Plaintiff's
application to proceed in <u>forma</u> <u>pauperis</u> ("IFP"), pursuant to 28
U.S.C. § 1915(a) (1998), and order the Clerk of the Court to file
the Complaint.

        At this time, the Court must review the Complaint, pursuant
to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it
should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Complaint shall be dismissed.

## I.  <u>BACKGROUND</u>

Plaintiff, Glen Mays ("Mays"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants. State correctional officers ("SCO") Truppo, Nicolaro, and Kernuz, each of whom is a correctional officer at the Sussex County Jail; David DiMarco, Warden at the Sussex County Jail; and David Weaver, Sussex County Prosecutor.  (Complaint, Caption, ¶¶ 4b-4c, 6).

The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only. The Court cannot make any findings as to the veracity of Plaintiff's allegations, at this stage.  Mays simply alleges that, on or about July 26, 2007, at about 10:15 a.m., Mays was standing on the bench in the day room at Sussex County Jail when SCO Truppo yelled at him over the loud speaker not to do so.  An argument ensued, and SCO Truppo came out towards Plaintiff to take him to the "hole."  Truppo also called on his "walkie talkie" for assistance.  In about two minutes, SCOs Truppo, Nicolaro and Kernuz "physically assaulted Plaintiff using

excessive force and caused [Plaintiff] physical injury and mental trauma." (Compl., ¶¶ 4b-4c, 6, attachment to Complaint).

Mays asserts that he has permanent damage to his eye -- specifically, loss of peripheral vision, and serious injury to his left shoulder requiring surgery after physical therapy.

Mays also asserts that Warden DiMarco should be held liable because he had supervisory control over the correctional officers and was well aware of the "brutality" that exists at the Sussex County Jail. (Compl., ¶ 6). Mays further contends that defendant Weaver is liable because he "did not attempt to prosecute" this assault incident, "which is a violation of Plaintiff's 14th Amendment not to deny a person (citizen) equal protection of the law." Mays alleges that Internal Affairs and the Attorney General ordered Weaver to pursue prosecution against these officers but Weaver refused. (Compl., ¶ 6).

This Court notes that Mays filed an earlier action concerning this very incident in this District Court in Mays v. Weaver, et al., Civil No. 09-3199 (PGS). Judge Sheridan dismissed that action, by Opinion and Order dated August 10, 2009, for failure to state a claim. However, Judge Sheridan dismissed the action without prejudice, giving Mays the opportunity to amend his Complaint to cure the deficiencies noted in the Opinion dated August 10, 2009.

3

Mays seeks an unspecified amount in punitive and compensatory damages for the alleged violations of his Eighth and Fourteenth Amendment rights.  (Compl., ¶ 7).

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the Plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

4

in the light most favorable to the Plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  <u>See</u> <u>also</u> <u>Erickson</u>, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during

detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

_____

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausible give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must

now allege "sufficient factual matter" to show that a claim is

facially plausible.  This then "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged.  Id. at 1948.  The Supreme Court's ruling in

Iqbal emphasizes that a plaintiff must demonstrate that the

allegations of his complaint is plausible.  Id. at 1949-50; see

also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside,

578 F.3d 203, 210 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the

"final nail-in-the-coffin" for the "no set of facts" standard set

forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that

---

[2]   In Conley, as stated above, a district court was
permitted to summarily dismiss a complaint for failure to state a
claim only if "it appear[ed] beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of
facts" standard, a complaint could effectively survive a motion
to dismiss so long as it contained a bare recitation of the
claim's legal elements.

applied to federal complaints before <u>Twombly</u>.  <u>Fowler</u>, 2009 WL
2501662, *5.

The Third Circuit now requires that a district court must
conduct the two-part analysis set forth in <u>Iqbal</u> when presented
with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [<u>Iqbal</u>, 129 S.Ct. at 1949-50<u>]</u>.
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [<u>Id</u>.]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  <u>See Phillips</u>,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'" <u>Iqbal</u>, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." <u>Id</u>.

<u>Fowler</u>, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this
<u>pro se</u> pleading must be construed liberally in favor of
Plaintiff, even after <u>Iqbal</u>.  See <u>Erickson v. Pardus</u>, 551 U.S. 89
(2007).  Moreover, a court should not dismiss a complaint with
prejudice for failure to state a claim without granting leave to
amend, unless it finds bad faith, undue delay, prejudice or
futility. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 110-
111 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 117 (3d Cir.
2000).

III.  SECTION 1983 ACTIONS

Mays brings this action pursuant to 42 U.S.C. § 1983.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must

allege, first, the violation of a right secured by the

Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir.

1994).

IV.  ANALYSIS

A.  Claim Against Prosecutor Weaver

Mays' claim against Prosecutor Weaver for not prosecuting

the officers for their assault against Plaintiff fails to state a

cognizable claim under § 1983 and must be dismissed.  Weaver is

entitled to absolute prosecutorial immunity from May's claim that

he failed to prosecute criminal complaints that Mays wanted to be

filed against the other defendants.  See Kulwicki v. Dawson, 969

F.2d 1454, 1463-64 (3d Cir. 1992)(the decision to initiate

prosecution is at the core of a prosecutor's judicial role and

9

entitle's him to immunity).   See also Ludwig v. Berks County, Pa., 313 F. App'x 479, 482 (3d Cir. 2008)(finding immunity with respect to a decision not to prosecute).

B.   Claim Against Warden DiMarco

Mays next asserts a claim of supervisor liability against Warden Di Marco.   In his Complaint, Plaintiff plainly states that his claim is premised solely on the Warden's supervisory role as the Warden of Sussex County Jail.

Mays is well aware that this very same claim was dismissed in his earlier action, Mays v. Weaver, et al., Civil Action No. 09-3199 (PGS), on August 10, 2009.   In that Complaint, Mays alleged an identical claim against Di Marco regarding the same incident, which Judge Sheridan dismissed for failure to state a claim.   Relying on Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988), Judge Sheridan dismissed the Complaint against Di Marco and other supervisory officials because liability cannot be predicated solely on the operation of respondeat superior.   See August 10, 2009 Opinion at page 6, Mays v. Weaver, et al., Civil Action No. 09-3199 (PGS), Docket Entry no. 2.   Therefore, Mays is barred from re-litigating this claim pursuant to the principle of collateral estoppel or claim preclusion.[3]

---

[3]   Federal and New Jersey law require the same basic elements for claim preclusion to apply:
(1) the judgment in the final action must be valid, final, and on the merits; (2) the parties in the later action must be identical to[,]or in privity with[,] those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.   Watkins v.

In his Opinion, Judge Sheridan stated that Plaintiff would be permitted to re-open his case by alleging facts indicating that the named defendant should be held liable under a supervisor liability theory.  Mays' Complaint here fails to do so.  Accordingly, this claim will be dismissed for failure to state a claim.

C.  Claim Against Correctional Officers

Finally, Mays asserts an excessive force claim against the remaining defendants, SCO Truppo, SCO Nicolaro, and SCO Kernuz.  This claim was raised in Mays' earlier action, Mays v. Weaver, et al., Civil Action No. 09-3199 (PGS), but Mays failed to name these individual officers as defendants.  Although Judge Sheridan had dismissed this same claim, he stated that Plaintiff could reopen his case by naming the defendants who were personally involved in the alleged wrongs against him.  See August 10, 2009 Opinion at page 6, Mays v. Weaver, et al., Civil Action No. 09-3199 (PGS), Docket Entry no. 2.

An excessive force claim may be a violation of either the Eighth and Fourteenth Amendments.  See Graham v. Connor, 490 U.S. 386, 392-394 (1989)(cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment, cases

---

Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 412 (1991) (citing Federated Dep't Stores v. Moitie, 452 U.S. 394, 398 (1981)).  This Court finds that all three requirements are met here.

involving the use of force against pretrial detainees are examined under the Fourteenth Amendment, and cases involving the use of force during an arrest or investigatory stop are examined under the Fourth Amendment). Here, it is not clear whether Mays was a convicted prisoner awaiting sentencing or a pretrial detainee at the time of the alleged incident in July 2007. As such, this Court will analyze the excessive force claim under both the Eighth Amendment standard and the due process standard under the Fourteenth Amendment.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments, i.e., they cannot be 'cruel and unusual.'" Rhodes v. Chapman, 452 U.S. 337, 345 (1981). The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Id. at 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)).

To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the

officials acted with a sufficiently culpable state of mind.
Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective
component is contextual and responsive to "'contemporary
standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8
(1992).  The subjective component follows from the principle that
"'only the unnecessary and wanton infliction of pain implicates
the Eighth Amendment.'"  See Farmer, 511 U.S. at 834 (quoting
Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and
citations omitted)); Rhodes, 452 U.S. at 345.

What is necessary to establish an unnecessary and wanton
infliction of pain varies also according to the nature of the
alleged constitutional violation.  Hudson, 503 U.S. at 5.  Where
the claim is one of excessive use of force, the core inquiry as
to the subjective component is that set out in Whitley v. Albers,
475 U.S. 312, 320-21 (1986)(citation omitted):  "'whether force
was applied in a good faith effort to maintain or restore
discipline or maliciously and sadistically for the very purpose
of causing harm.'"  Quoted in Hudson, 503 U.S. at 6.  "When
prison officials maliciously and sadistically use force to cause
harm, contemporary standards of decency always are violated."
Id. at 9.  In such cases, a prisoner may prevail on an Eighth
Amendment claim even in the absence of a serious injury, the
objective component, so long as there is some pain or injury and
something more than de minimis force is used.  Id. at 9-10
(finding that blows which caused bruises, swelling, loosened

13

teeth, and a cracked dental plate were not <u>de minimis</u> for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including the need for the use of force, the amount of force used , the extent of injury inflicted, the extent of the threat to others, and any efforts to temper the severity of force. <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000) (quoting <u>Whitley v. Albers</u>, 475 U.S. at 321). Thus, not all use of force is "excessive" or will necessarily give rise to a constitutional violation. <u>See</u> <u>Hudson</u>, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action"). Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." <u>Id</u>. at 9-10.

Here, Mays alleges that he was assaulted by SCO Truppo, SCO Nicolaro and SCO Kernuz with unnecessary force and intent to harm while Plaintiff was handcuffed and restrained. Mays further alleges that he sustained bodily injury that required medical treatment.[4] Therefore, based on the allegations in the

---

[4] "[T]he Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." <u>Smith v. Mensinger</u>, 293 F.3d 641, 648 (3d Cir. 2002). Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied maliciously and sadistically to cause harm. <u>Id</u>. at 649; <u>Brooks</u>, 204 F.3d at 106. Otherwise, an inmate "could constitutionally be attacked for the sole purpose of causing pain as long as the

Complaint, if true, it would appear that Mays has asserted facts that may be sufficient to suggest that the officer defendants exhibited malicious and sadistic conduct intended to cause Plaintiff pain.  Such conduct, if true, is "repugnant to the conscience of mankind" absent extraordinary circumstances necessary to justify that kind of force.  Hudson, 503 U.S. at 10.

To the extent that Mays was a pretrial detainee at the time the incident occurred, the standard to be applied in an excessive force claim differs only slightly.  A pre-trial detainee is protected by the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535, n.16, 545 (1979); City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983); Fuentes v. Wagner, 206 F.3d 335, 341 n.7, 9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).

Analysis of whether a detainee or un-sentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense,

_____

blows were inflicted in a manner that resulted" in injuries that were de minimis.  Id.

however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

<u>Bell</u>, 441 U.S. at 535-39 (citations omitted).

The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  <u>Id</u>. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.

Id. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

Under this standard, for purposes of surviving dismissal at this preliminary stage, Plaintiff has adequately alleged that SCO Stills used excessive force against him in violation of his constitutional rights.  The allegations may support a claim that Plaintiff was viciously assaulted by the defendant officers for no apparent reason other than to "punish" him.  There are no allegations that Plaintiff was himself attacking or provoking the defendants when they assaulted him.  Under these circumstances, if true, Mays may be able to prove that defendants' actions were a grossly exaggerated response.

Therefore, this Court finds that Mays has alleged facts sufficient to support an excessive force claim under either the Eighth or Fourteenth Amendment, and this claim would be allowed to proceed at this time; however, Plaintiff's claim appears to be time-barred.

This Complaint was submitted for filing on August 31, 2009.[5] The assault at issue occurred on July 26, 2007.  A court may dismiss a complaint for failure to state a claim, based on a

---

[5]  Although the Clerk's Office received the Complaint on September 14, 2009, Plaintiff signed and dated the Complaint on August 31, 2009.  Accordingly, under the "prison mailbox rule," this Court will use this date for purposes of calculating the timeliness of the action.  See Houston v. Lack, 487 U.S. 266, 270-71 (1988); see also Henderson v. Frank, 155 F.3d 159, 163-64 (3d Cir. 1988) (using date prisoner signed petition as date he handed it to prison officials for purposes of calculating timeliness of habeas petition).

time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007)(if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"); Hunterson v. DiSabato, 2007 WL 1771315 (3d Cir. 2007)("district court may sua sponte dismiss a claim as time-barred under 28 U.S.C. § 1915(A)(b)(1) where it is apparent from the complaint that the applicable limitations period has run")(citing Jones v. Bock).

Federal courts look to state law to determine the limitations period for § 1983 actions. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007). Civil rights or constitutional tort claims, such as that presented here, are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wallace, supra; Jones v. R.R. Donnelley & Sons, 541 U.S. 369, 382 (2004)(federal civil rights claims under §§ 1981, 1982, 1983 and 1985 are subject to the state statute of limitations for personal

18

injury actions); Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiffs' claims under §§ 1983 and 1985.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).

Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).  Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application.  Wilson v. Garcia, 471 U.S. at 269.

Moreover, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. at 388 (emphasis in original).  A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982).  See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff's actual knowledge is irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the

19

claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." <u>Fassnacht v. United States</u>, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996)(citing <u>Oshiver</u>, 38 F.3d at 1386).

Here, the assault occurred on July 26, 2007.  Thus, it is plain from the face of the Complaint that Mays knew, or had reason to know, on July 26, 2007, that he may have a claim against the defendant officers who assaulted him.  However, Mays did not file this federal action until August 31, 2009 -- beyond the limitations period.

However, Mays may be entitled to equitable tolling of the statute of limitations.[6]  Mays mistakenly filed this new action

---

[6]  New Jersey statutes set forth certain bases for "statutory tolling."  <u>See</u>, <u>e.g.</u>, N.J. Stat. Ann. § 2A:14-21 (detailing tolling because of minority or insanity); N.J. Stat. Ann. § 2A 14-22 (detailing tolling because of nonresidency of persons liable).  New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.  <u>See</u> <u>Freeman v. State</u>, 347 N.J. Super. 11, 31 (citations omitted), <u>certif. denied</u>, 172 N.J. 178 (2002).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  <u>Id.</u>
    When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  <u>See</u> <u>Lake v. Arnold</u>, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios:
    (1) where a defendant actively misleads a plaintiff
    with respect to her cause of action; (2) where the
    plaintiff has been prevented from asserting her claim

rather than submit an amended pleading with respect to his earlier action, Mays v. Weaver, et al., Civil Action No. 09-3199 (PGS), which had been timely filed, and which he was permitted to do in accordance with Judge Sheridan's Opinion and Order dated August 10, 2009.  Accordingly, this Court will sever this excessive force claim against defendants SCO Truppo, SCO Nicolaro, and SCO Kernuz, from this action, and direct that the claim be docketed in Plaintiff's earlier action, Mays v. Weaver, et al., Civil Action No. 09-3199 (PGS), as an amended pleading, so that Judge Sheridan may make a determination of whether equitable tolling should be applied in that action.

This action will be closed.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff's Complaint will be dismissed, with prejudice, in its entirety for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  An appropriate order follows.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: February 22, 2010

---

as a result of other extraordinary circumstances; or
(3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9.